## DANIEL FITZSIMMONS *v.* ISAAC M. SOUTHWICK.

### *Evidence. Statute. Practice.*

Where an administrator of an estate of a female intestate takes possession of articles of personal property as belonging to said estate, and is sued in *tort* therefor by a party claiming to have been married to the intestate at her decease, and claiming title by virtue of such marriage, he cannot under the statute, (G. S., p. 327. § 24,) be a witness to prove his marriage with the intestate, though the defendant was not named in the writ as administrator.

If it is apparent that a party against whom an error was committed by a ruling of the court, has not been prejudiced by it, the judgment should not be reversed for such error.

THIS was an action of trespass *de bonis*, for certain articles of household furniture, and goods, and other personal property, with a count in trover, joined under the statute, for the same articles. The plaintiff's writ was dated on the 12th of August, 1863. Plea, the

general issue, with notice of special matter in defence. Trial by jury at the March Term, 1865, KELLOGG, J. presiding.

On trial, the plaintiff's testimony tended to prove that the articles described in his declaration were in his possession at the time of the alleged taking and conversion by the defendant, and that he, the plaintiff, bought a part of the same with his own money, and that the remainder were originally the property of one Catharine Esler, a widow, with whom the plaintiff lived after the death of her husband; and the plaintiff claimed that he was lawfully married to the said Catharine Esler, and became entitled to the said articles, which were her personal property, by virtue of his marital right as her husband, previous to her decease. The plaintiff testified that he informed the defendant, before and at the time of the alleged taking and conversion of these articles, that he was married to the said Catharine Esler, and claimed these articles as his own property.

It appeared that Catharine Esler resided in Rutland, and died on the 25th of December, 1862, leaving a family of small children, and that the defendant was, on the 19th of January, 1863, duly appointed administrator of her estate. The said Catharine Esler, previous to the time of her death, owned a small house lot and a dwelling house thereon, and she resided in the said dwelling house at the time of her decease.

The testimony on the part of the defendant tended to prove that immediately after he took letters of administration on the estate of the said Catharine Esler, he went to the house in which she resided at the time of her death, and found the defendant there, and requested him to show or point out the articles of property which belonged to him, and to take the same away, as he, the defendant, was going to take the children of the said Catharine Esler away and to shut up the house; and that, thereupon, the plaintiff went over the whole house and picked out many articles which he claimed as being his own, and took the same away, and made no claim at that time to any of the articles which were left there, among which were the articles which the plaintiff's testimony tended to show were bought with his own money as aforesaid, but gave the defendant to understand that all of the articles which were not picked out and taken away by him as aforesaid, and were thus left there, belonged to the

said Catharine Esler, and that the plaintiff, to the knowledge of the defendant, never made any claim to the articles which were thus left in the house, nor made any pretence or claim that he was married to the said Catharine Esler, until after the commencement of this suit; and that the defendant, as administrator of the said Catharine Esler, took charge of all the property which was thus left in her house, and duly administered upon the same as her property.

The plaintiff offered to prove by his own testimony that he was lawfully married to the said Catharine Esler, on the 7th of September, 1862, at Whitehall, in the State of New York. This testimony was objected to by the defendant, and the court excluded the same; to which decision of the court the plaintiff excepted.

The plaintiff requested the court to charge the jury that he was entitled to recover for all articles of property which he purchased with his own money, and which were taken and disposed of by the defendant, and the court so instructed the jury; but, in this connection, the court further instructed the jury, that if, at the time when the plaintiff was requested by the defendant to show or point out the articles of property which belonged to him as aforesaid, he made no claim to these articles which the jury might find were purchased with his own money, but, on the contrary, gave the defendant to understand that these articles belonged to the said Catharine Esler, as the defendant's evidence tended to prove, then the possession of these articles taken by the defendant at that time, was to be regarded as being impliedly authorized by the plaintiff, and as being lawful, and the plaintiff would, in that case, be precluded from complaining of the defendant's interference with these articles, and could not treat the defendant as a wrong-doer, or sustain any action of trespass or trover in respect to the same until he informed the defendant of his claim and called on him for the property. To so much of the charge of the court, as is above stated, the plaintiff excepted. In respect to all other points in the case, the court gave to the jury such instructions as were satisfactory. Verdict for the defendant.

*R. R. Thrall* and *C. H. Joyce*, for the plaintiff.

*W. H. Smith*, for the defendant.

The opinion of the court was delivered by

PECK, J. The action is trespass and trover for various articles of

personal property, consisting principally of household furniture and provisions which were in and about the dwelling house of Catharine Esler at the time of her decease, of whose estate the defendant was administrator.

It appeared at the trial, beyond dispute, that some of these articles were the property of the intestate at her decease, unless the plaintiff was married to the intestate, as he claimed, and thereby acquired her title.   The plaintiff on trial claimed title to a portion of the property by virtue of such marriage.   As to the residue of the property, the plaintiff claimed title on the ground that it never belonged to the intestate, and that he purchased it originally with his own money, and introduced evidence tending to prove such title to this latter portion of the property, and offered himself as a witness to prove a marriage between him and the defendant's intestate.   The defendant claimed, and his evidence tended to show, that the property which he took all belonged to the intestate, and, that he took it as such administrator, with the knowledge and permission of the plaintiff, and that the plaintiff never asserted any claim to any of the articles in question, to the knowledge of the defendant, till since the commencement of this suit.

The only exception taken by the plaintiff at the trial, was to the refusal of the court to allow the plaintiff to testify to a marriage between himself and the intestate.

It is insisted by the counsel for the defendant, as the verdict was for the defendant, that under the charge of the court as to the effect of the permission and license of the plaintiff, the verdict must have been the same if the evidence excluded had been admitted by the court and found by the jury to be true, and therefore whether the decision excluding the evidence was right or wrong, the judgment ought not to be reversed.   The legal proposition is correct, that if it is apparent that the party against whom the error was committed has not been prejudiced by it, the judgment should not be reversed for such error.   But it does not so appear.   It does not appear whether the jury found the license proved or not ;  they may have failed to find the license and may have found the verdict for the defendant, solely on the ground of title in the intestate to the whole property taken by the defendant.   If it had been conceded by the defendant that some

of the property, for which the plaintiff sought to recover, was the property of the plaintiff, then the jury, in order to find, as they did, a verdict for the defendant, must have found the permission and license of the plaintiff proven. The defendant's evidence tending to show that after the decease of Catharine Esler, and after the defendant's appointment as administrator, he called on the plaintiff and requested him to select such articles as he claimed belonging to him, the plaintiff, and that the plaintiff did so and took them away, and that he, the defendant, only took the residue, tended to prove that the whole property taken by the defendant belonged to the estate of the intestate, and the jury may have so found. The license too was in dispute. The plaintiff's evidence tended to prove that he informed the defendant when the defendant took the property, that he, the plaintiff, was married to the intestate, and that he claimed the property by virtue of the marriage. It is impossible to say but that the verdict was founded wholly on the defendant's title. The refusal of the court, therefore, to allow the plaintiff to testify to the marriage may have changed the verdict from what it otherwise would have been. The question then is whether that testimony was properly excluded? Was Catherine Esler, the deceased, " *a party to the contract or cause of action in issue and on trial* " within the meaning of the statute? The marriage contract offered to be proved, is a contract between the plaintiff and the deceased, but the action is not brought upon that contract in the technical sense of pleading. The action in that sense is not upon contract,—the action is tort. It may be difficult in many cases to determine in actions of tort, what is the cause of action in issue and on trial within the meaning of the statute. Controversies may arise after the decease of a party as to the ownership of property, that is, whether it belonged to the deceased at his death, or to the party living who claims it, and yet no cause of action may exist upon which an action could be sustained until the surviving party, or the representatives of the deceased, interferes with the property in such a manner as to give the other a right of action, if he can show title to it. Such is the present case. The plaintiff claims under a title that he derived, if at all, from the deceased before her death. The defendant claims title as the administrator of the deceased, adverse to the plaintiff's alleged title, and

upon the ground that the intestate owned the property at the time of her death. the right of action, strictly speaking, did not exist till after the decease of the intestate, nor until the defendant took the property. In determining whether this case comes within the provisions of the statute, we should look at matters of substance rather than technical terms and forms. The alleged cause of action, in a strict technical sense, is the taking by the defendant of the property of the plaintiff. The deceased was not a party to the taking and conversion complained of, but she was the party holding the title under which the defendant, as her representative, claims, and a party to the alleged marriage contract by which the plaintiff claims to have derived his title from her in her life time. The title is the real matter in controversy. The purpose of the statute was to guard the estate of the deceased party from the apprehended danger of allowing the surviving party to testify, when the other party is disabled by death to meet and explain such testimony. The legislature have, therefore, provided in effect, that when one party to a controversy is dead and *can* not testify, the other *shall* not. The direct effect of a judgment for the plaintiff in this case is to lessen the estate of the deceased to the extent of the recovery by the plaintiff; as much so as if the action were upon a contract claimed to have been made by the plaintiff with the deceased. The form of action is tort, but the controversy is as to the plaintiff's title, whether he acquired title from the intestate in her lifetime. The plaintiff seeks to show this by testifying to a contract of marriage with the deceased. If the plaintiff claimed title by *purchase* from the intestate, I think it clear that he could not prove such purchase by his own testimony. The contract of marriage, to which the plaintiff offered to testify, is a contract with the deceased, and the same in its legal effect, upon the title in dispute, as a contract of purchase from her. The controversy in this case is a cause of action to which the deceased may fairly be said to be a party, within the meaning of the statute; if not, the statute would seem to fail to accomplish its purpose. The subsequent provision in the statute, that when an executor or administrator is a party the other party shall not be admitted to testify in his favor, seems to have the same purpose in view, and, in the opinion of the court, embraces this case. It is true the defendant is not named in

the writ as administrator, but he is in fact such, and in taking the property he acted in that capacity and in behalf of the estate of the deceased, and justifies on trial upon that ground. If the plaintiff at the time the defendant took the property had refused to deliver it, and driven the defendant in this suit to commence an action of trover or replevin against him for the property, he might have declared as administrator, and the controversy as to title would have been the same as in this case. If such case would have come within the statute, this ought to be so regarded. The right of the plaintiff in this suit to testify ought not to be made to depend on the accidental circumstance of the one party, or the other, being plaintiff in the suit, when the matter in issue and the parties are the same, and the effect of the judgment the same upon the estate of the deceased.

Judgment affirmed.