ALBERT A. GREEN'S ADMINISTRATOR *v.* CORA B. MASON AND

F. W. MASON.

January Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed March 9, 1911.

*Deed of Dying Deaf Mute—Action to Set Aside— Fraud and Undue Influence—Whether Findings Constitute—Witnesses—Waiver of Incompetency.*

A party may waive the incompetency of a witness either by calling the witness to testify, or allowing him to testify without objection.

Later advancement in education and knowledge has rendered obsolete the ancient doctrine that deaf mutes are taken to be idiots.

In a suit in equity by the administrator of a deceased deaf mute's estate to set aside, on the ground of fraud and undue influence, intestate's deed to defendant of real and personal property, executed at defendant's home while intestate was there confined to his bed with a disease of which he died the next day, the chancellor's findings considered, and *held* that they do not in themselves, as matter of law, show fraud or undue influence on the part of defendant or her husband.

APPEAL IN CHANCERY. Heard on the pleadings and the chancellor's findings of fact, at the September Term, 1909, Franklin County, *Butler*, Chancellor. Decree dismissing the bill with costs to defendants. The orator appealed. The opinion states the case.

*N. N. Post* and *Elmer Johnson* for the orator.

The facts and circumstances found and reported by the chancellor are such as the law regards with suspicion, and raise the presumption of fraud and undue influence. *Re Barney's Will*, 70 Vt. 352; *Re Cowdry's Will*, 77 Vt. 359; *Re White's Will*, 78 Vt. 479; *Re Rogers' Will*, 80 Vt. 259; *Hobart's Admr.* v. *Vail*, 80 Vt. 152; *Whelan* v. *Whelan*, 8 N. Y. Com. Law.

539.  Fraud is often a conclusion of law, which courts will infer from facts and circumstances, whether the existence of a fraudulent purpose, in the strict sense, be proved or not. *Chanlender* v. *Colgrave*, 17 Conn. 27; *Pettibone* v. *Stevens*, 15 Conn. 26; *Story* v. *N. W. R. Co.*, 24 Conn. 114.

*C. G. Austin & Sons* for the defendants.

The chancellor's findings should stand.  Fraud is never presumed.  *Wolcott* v. *Hamilton*, 61 Vt. 79; *Darling* v. *Ricker*, 68 Vt. 471; *Sawyer* v. *Child*, 68 Vt. 360.  Influence, to be undue, must be equivalent to moral coercion.  *Foster's Exrs.* v. *Dickenson*, 64 Vt. 233.

HASELTON, J.   This is a bill in equity brought by the orator as administrator of the estate of Albert A. Green.  The bill seeks, on the ground of fraud and undue influence, to set aside a deed purporting to convey real and personal property to the defendant Cora B. Mason.  The deed was executed a few hours before the death of the plaintiff's intestate.  The defendant, Cora B. is the niece of the intestate who was about sixty-three years of age and unmarried, and the defendant, F. W. Mason, is the husband of Cora B.

The facts in the case were found by the chancellor; and the case is before us on an appeal by the orator from a decree dismissing the bill.

The intestate was a deaf mute of some education, capable of communications in writing, residing at St. Albans Bay; and the property in question was a small homestead worth about eight hundred dollars, personal property valued at seventy-five dollars, and the sum of forty-two dollars and eighty-six cents in money.  The intestate had a sister living in Keene, New Hampshire, and several nephews and nieces besides the niece Cora B.  She lived only about a quarter of a mile from the intestate.  She was familiar with the alphabet of the deaf and dumb having been taught it by the intestate in her childhood. She could communicate readily with him by the use of that alphabet and, so far as the case shows, was the only person in the vicinity of his home who could do so.  She and the intestate

had always been on friendly terms. She visited him, sent him food and delicacies, had him at her house at Thanksgiving dinners and Christmas dinners, sometimes mended his clothing, and on two occasions when he was sick, many years before his last sickness, attended him. The intestate frequently gave her fruit and berries from his garden. Her husband, Dr. Mason, was well acquainted with the intestate but was unable to communicate with him in the language of the deaf and dumb and they were not particularly intimate. Something like a year before the death of the intestate he was feeling ill but refused to go to Dr. Mason and instead consulted with another physician and took the medicine of the other doctor. The orator undertook to show an estrangement of feeling between the intestate, on the one hand, and his niece, Cora, and her husband, Dr. Mason, on the other. But the chancellor finds that there was no such estrangement.

Fred Green, a nephew of the intestate and a brother of the defendant, Cora, also lived, with his family, in the immediate neighborhood of his uncle the intestate. This nephew and his wife were on friendly terms with the intestate, he occasionally visited them, frequently brought their mail to them from the post office, and Fred's wife frequently mended the clothes of the intestate and otherwise ministered to his wants. It did not appear that either the nephew Fred or Fred's wife could use the deaf and dumb alphabet.

One day the defendant Dr. Mason, learned that the intestate was ill. Thereupon the doctor called upon the intestate, found that he was seriously ill and ascertained by signs and motions made that the intestate desired to see his niece Cora. Cora was then away from home but that evening the doctor notified her of the illness of her uncle, and the next day she and her husband visited the uncle and persuaded him to go to their house where he could be better cared for than at his own home. He then went to the defendant's house where he was given a comfortable room but where he died after about two days. The day before he died the intestate by means of the deaf and dumb alphabet communicated to his niece, Cora, that he wished to see a lawyer about his property and that he had no preference as to what lawyer should be called. Thereupon the niece

notified her husband of the wishes of her uncle and Chauncey G. Austin, Esq., was telephoned to. He arrived about eight o'clock in the evening. He communicated with the intestate through the niece as an interpreter and was so told by the intestate that he wanted to convey what property he had to his niece for his care and support and the payment of his debts and a proper Christian burial, but that he wanted to reserve to himself the income from his property so long as he might desire. Mr. Austin prepared a deed in accordance with the wishes of the intestate so expressed and after writing it out showed it to the intestate who appeared able to read and who, after looking at it for some moments, signed it using a book for a rest. Mr. Austin signed as a witness and a neighbor was called in who also signed as a witness when upon holding the paper up to the intestate and pointing to the signature he received an affirmative nod. The acknowledgement was signed after the intestate had apparently looked it over, had nodded his head in approval and waved his hand toward his niece. The chancellor finds that the attorney exercised great care in ascertaining whether the intestate fully understood the transaction and further finds that he did, in fact, fully understand and comprehend it. At this time his mental condition appeared to be normal, but his disease pleuro-pneumonia was rapidly progressing. However, soon after the execution of the instrument the intestate got out of bed without assistance. An hour or so later, about ten o'clock in the evening, he got out of bed and sat in a chair while his bed was fixed up. There was no marked change in his condition until about six o'clock in the morning, a few minutes before he died.

The defendants cared for the intestate at the time of his death, gave him a proper burial, paid the funeral expenses and erected a suitable tombstone at his grave. They also paid his indebtedness which, however, was small. The defendants both testified, without objection, and some of the material facts are found on their testimony, and, giving consideration to their testimony, the chancellor finds that there was no fraud or undue influence in the transaction unless the facts in respect to the situation in themselves constitute fraud and undue influence. However, the chancellor reports in effect that he makes a con-

trary finding if a presumption of undue influence and a duty on his part to exclude the general testimony of the defendants concurred. But they did not concur, for the representative of a deceased party may waive the disqualification of the statute either by himself·calling the disqualified witness or by permitting him to testify without objection. *Comstock's Adm'r.* v. *Jacobs,* 84 Vt. 277; *Dee* v. *King,* 77 Vt. 230; *Ainsworth* v. *Stone,* 73 Vt. 101; *Paine* v. *McDowell,* 71 Vt. 28; *State* v. *Slack,* 69 Vt. 486; *Linsley* v. *Lovely,* 26 Vt. 123, 133.

Some stress is laid upon the facts that at the time of the transaction the defendant, so far as the evidence goes, did not realize that his illness would result fatally, while the defendants were morally certain that he could not recover and did not tell him so. The conduct of the plaintiff's intestate rather indicates that he was acting in contemplation of either  life or death, and we do not think the defendants were, as matter of law, guilty of fraud, in leaving the intestate to indulge whatever hope he might have had of recovery.

There is no reason to suppose that the testimony of the defendants and all the circumstances were not carefully scrutinized, and all presumptions and inferences duly weighed by the chancellor, and his finding of the absence of fraud and undue influence stands. *Hobart's Adm'r.* v. *Vail,* 80 Vt. 152; *In re White's Will,* 78 Vt. 479; *Morgan* v. *Morgan,* 82 Vt. 243.

Formerly deaf mutes were taken to be idiots. 1 Hale's P. C. 34. But the education and the better discernment of later times have shown the fallacy of the ancient theory in this regard. *Earl of Jersey* v. *Lady Mary O'Brien,* Barnes' Notes of Cases, 168. *Farmer* v. *Farmer,* 1 H. L. Cases, 724; *Quinn* v. *Halbert,* 55 Vt. 224, 228. The obsolete doctrine is not invoked by counsel.

*Decree affirmed and cause remanded.*