BILLINGSLEY *v.* GULICK.

1. ESTOPPEL—INCONSISTENT POSITIONS.
   One may not take inconsistent positions in trial of case.

2. SAME—ADMISSIONS.
   Where admission is made in first trial, admitting party, on second trial, is estopped from taking position inconsistent therewith.

3. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED —WAIVER—ESTOPPEL.
   Plaintiff, by failing to object to competency of defendants to testify as to matters equally within knowledge of deceased (3 Comp. Laws 1929, § 14219) and electing to cross-examine them on first trial in relation thereto, waived her right to object to their testimony on subsequent trial.

Appeal from Allegan; Miles (Fred T.), J. Submitted October 23, 1931. (Docket No. 56, Calendar No. 35,844.) Decided January 4, 1932.

Case under the death act by Mabel Billingsley, administratrix of the estate of Gurnard Billingsley, against Verle Gulick and another for personal injuries resulting in the death of plaintiff's decedent. Verdict and judgment for plaintiff. Defendants appeal. Reversed, and new trial granted.

*Howard, Kimball & Howard,* for plaintiff.

*Leo W. Hoffman* and *Clare E. Hoffman,* for defendants.

POTTER, J. Plaintiff, administratrix of her husband's estate, sued defendants to recover damages for the alleged negligent killing of plaintiff's intes-

---

As to waiver of incompetency of witness to testify in subsequent action, see annotation in 64 A. L. R. 1180.

tate. Judgment for plaintiff on the first trial was reversed by this court. *Billingsley* v. *Gulick,* 252 Mich. 235. On retrial, there was judgment for plaintiff, and defendants appeal.

The first question presented is the effect on the second trial of the waiver of defendants' disqualification as witnesses on the first trial, the judgment in which was reversed by this court and the cause remanded for a new trial.

When, upon the first trial, defendants were sworn and placed upon the witness stand as witnesses, plaintiff knew they were disqualified from testifying to matters equally within the knowledge of the deceased. She could object to their being examined at all as to matters equally within the knowledge of the deceased because of their disqualification, or admit their qualification to testify and have the benefit of cross-examination. She could not do both. Defendants were sworn as witnesses and examined on direct examination and fully cross-examined on the first trial. The question is whether the waiver of their disqualification by failing to make timely objection on the first trial has any effect on the second trial. Plaintiff insists that, upon the second trial, the disqualification of defendants as witnesses to testify to matters equally within the knowledge of the deceased may be raised, though it was waived in open court by failure to object to their testimony on the first trial and by plaintiff's affirmative action in cross-examining them after they had given their testimony on direct examination in the case at that time. Defendants claim plaintiff, by failing seasonably to object to the witnesses' testifying to matters equally within the knowledge of the deceased on account of their disqualification on the first trial, waived any objection to their competency as wit-

nesses on the second trial. It is conceded plaintiff could, on the first trial, have excluded defendants' testifying as to matters equally within the knowledge of the deceased, but she elected to admit such testimony without objection, and this election was irrevocable so far as that trial was concerned. Defendants contend the action of the plaintiff amounted to an irrevocable admission of the competency of defendants as witnesses to testify to matters equally within the knowledge of the deceased; that the plaintiff cannot be permitted to play fast and loose; to try the case at one time on the theory defendants were competent witnesses to matters equally within the knowledge of the deceased and submit them to searching cross-examination, and on the second trial exclude their testimony, including that elicited by plaintiff on cross-examination, upon the ground they were incompetent to testify to matters equally within the knowledge of the deceased, as to the very questions upon which they were examined and cross-examined on the first trial.

One cannot take inconsistent positions in the trial of a case. Where an admission is made on one trial, the admitting party, on a second trial, is estopped from taking a position inconsistent with that taken on the first trial. *Connor* v. *Railway Co.*, 168 Mich. 29; *Johnston* v. *Cornelius*, 200 Mich. 209 (L. R. A. 1918D, 880); *Harrington* v. *Accident Ass'n*, 210 Mich. 327; *Hassberger* v. *General Builders' Supply Co.*, 213 Mich. 489, 495.

These principles are of general application. The important question is whether they are applicable to the present case.

"The waiver of objections or the consent to read a deposition continues and is operative at a *second trial* of the same action." 4 Jones, Commentaries

on Evidence (1st Ed.), § 646, citing *Vattier* v. *Hinde,* 7 Pet. (U. S.) 252; *Edmondson* v. *Barrell,* 2 Cranch, C. C. 228 (Fed. Cas. No. 4284).

In *Vattier* v. *Hinde, supra,* the parties, when the case was pending in the circuit, stipulated for the admission of all testimony taken in other cases. Depositions had been taken therein and were read on the trial in the circuit without objection. The decree rendered was reversed and the cause remanded for a new trial. It was then objected that the depositions were not regularly taken and the consent to their admission no longer binding. The court, by Chief Justice Marshall, said:

"The reversal of the original decree cannot annul the written consent of parties for the admission of testimony. That consent was not limited in its terms to the first hearing, but was co-extensive with the cause. The words in the decree of reversal, that the parties may proceed *de novo,* are not equivalent to a dismissal of the bill, without prejudice; nor could the court have understood them as affecting the testimony in the cause, or as setting aside the solemn agreement of the parties. The testimony, therefore, is still admissible, to the extent of that agreement."

In *Green* v. *Crapo,* 181 Mass. 55 (62 N. E. 956), privileged communications between attorney and client were involved. The privilege was waived in the probate court. The court, by Chief Justice Holmes, said:

"Nevertheless the objection was urged when the case came to be tried before the justice of this court, and an exception was taken when he ruled that the privilege having been waived could not be insisted upon before him. We do not think it necessary to remark upon the willingness to hold back this testi-

mony. We content ourselves with saying that the ruling was right. The privacy for the sake of which the privilege was created was gone by the appellant's own consent, and the privilege does not remain under such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice. *McKinney* v. *Railroad,* 104 N. Y. 352 (10 N. E. 544).''

In *Cowles* v. *Cowles' Est.,* 81 Vt. 498 (71 Atl. 191), it is said:

"The waiver of the incompetency of the plaintiff as a witness in proceedings before the commissioners bound the defendant in the hearing on appeal. *Green* v. *Crapo,* 181 Mass. 55 (62 N. E. 956), is authority on this point. There the plaintiff testified without objection in the probate court to a privileged communication between himself and the defendant. In the trial in the superior court objection was raised to the plaintiff's testifying in his own behalf, but the court ruled that the objection had been waived and the testimony was admitted. The Supreme Court sustained the ruling, saying in the opinion: 'The privacy for the sake of which the privilege was created was gone by the appellant's own consent.' ''

In *Belch* v. *Roberts,* 191 Mo. App. 243 (177 S. W. 1062), it is said:

"The plaintiff was introduced as a witness, but the objection was made that she was incompetent to testify, since the other party to the contract or cause of action was dead. Thereupon it was shown by uncontradicted evidence that in the trial of the case in the probate court the plaintiff testified and that her incompetency was waived because no objection was made at that time. When this was shown, the court overruled the objection and allowed her to testify. There was no error in so doing. (*Imboden* v. *St. Louis Union Trust Co.,* 111 Mo.

App. 220 [86 S. W. 263]; *Tomlinson* v. *Ellison*, 104 Mo. 105, 114 [16 S. W. 201]; *Ess* v. *Griffith*, 139 Mo. 322, 329 [40 S. W. 930]; *Rice* v. *Waddill*, 168 Mo. 99, 119 [67 S. W. 605]; *Jones* v. *Prudential Ins. Co.*, 173 Mo. App. 1 [155 S. W. 1106].)''

''Where a party representing a deceased person waives the incompetency of an interested witness to testify as to a transaction with the deceased, he must be held to have waived the incompetency of the witness to testify as to those matters in a subsequent suit in which the parties and issue are practically the same.'' 28 R. C. L. pp. 516, 517.

''An objection by the personal representative to the competency of certain witnesses on the ground that they are disqualified under the statute, which objection is made immediately after each of the witnesses is sworn, is in time and the disqualification of the witnesses is not waived by failure to object to their being sworn. But, as stated above, in the absence of adequate and timely objection, the protection of the statute is waived. And this waiver is not only for the instant and until the next question is asked the witness, but, according to the authorities, unlimited and extending throughout the entire progress of the proceeding, even to subsequent trials if between substantially the same parties and on substantially the same issues.'' 5 Jones, Commentaries on Evidence (2d Ed.), p. 4420, § 2276.

The question was considered by the supreme court of Vermont in *Comstock's Admr.* v. *Jacobs*, 89 Vt. 133 (94 Atl. 497, Ann. Cas. 1918 A, 465), where it is said:

''Defendant was a witness in his own behalf and, against the objection that he was incompetent to testify to the contract as the other party thereto was dead, was permitted to testify that he made a contract with the Comstocks for their life support

for which he was to have all their property.  Plaintiff had introduced no living witness to such a contract and his rebuttal evidence tended to show that no such contract was ever made.  Plaintiff had not called defendant as a witness at this trial.  When the case was first here it appeared that the plaintiff, in his opening case, called the defendant as a witness and examined him at length relative to the contract made by him with the Comstocks under which he received all their property, and also as to the amount of money and property received by him from plaintiff's intestate in her lifetime.  On the facts certified by the judge who presided at the trial, this court then held that the plaintiff, by calling the defendant as a witness and examining him as he did, waived the statutory incompetency and made him competent as a general witness in the case. *Comstock's Admr.* v. *Jacobs,* 84 Vt. 277, 281 (78 Atl. 1017, Ann. Cas. 1913 A, 679).  It is now claimed that when plaintiff called the defendant as a witness at the first trial he only inquired of him concerning Mrs. Comstock's bank book, and the judge presiding at the last trial states in the bill of exceptions now before us that it appeared that at a previous trial the defendant had been used as a witness by both parties, but the plaintiff had only used him as a witness concerning the bank book of Eunice Y. Comstock.

"No question is made but that the record when the case was first here showed as stated in that opinion.  The decision on the facts then certified up settled the competency of the defendant as a witness in his own behalf and became the law of the case to the extent of fixing his status as a witness in the subsequent trials.  *Cowles* v. *Cowles' Estate,* 81 Vt. 498, 503 (71 Atl. 191).  The waiver of defendant's incompetency as a witness having thus been established, it could not be impeached at a subsequent trial without falsifying the record of the former

trial. That record must stand as no steps were taken to have it corrected on a rehearing. But the exception could not be sustained if the question were an open one. It is generally held that when an executor or administrator, suing or defending on behalf of a decedent's estate, calls the adverse party and examines him in regard to transactions with the decedent, he thereby waives the statutory incompetency of the witness and makes him competent as a general witness in the case. Note to *Comstock's Admr.* v. *Jacobs* (84 Vt. 277 [78 Atl. 1017]), in Ann. Cas. 1913 A, 679, at p. 682, and cases cited; *Paine* v. *McDowell,* 71 Vt. 28 (41 Atl. 1042); *Ainsworth* v. *Stone,* 73 Vt. 101 (50 Atl. 805); *Dee* v. *King,* 77 Vt. 230 (59 Atl. 839, 68 L. R. A. 860); *Cowles* v. *Cowles' Estate,* 81 Vt. 498 (71 Atl. 191); *Green's Admr.* v. *Mason,* 84 Vt. 289 (79 Atl. 48); *Linsley* v. *Lovely,* 26 Vt. 123, 135.

"The bank book, concerning which plaintiff examined the defendant, was the principal subject-matter of the controversy. The time of the transaction to which this testimony related is not stated; but it must have been during Mrs. Comstock's lifetime, as the bank book had been transferred to the defendant and the deposit collected by him several months before her death. By calling the defendant and examining him as to this matter plaintiff waived the benefit of the statute and the defendant became a competent witness in his own behalf on all relevant matters. The justice of this rule is too apparent to require extended argument. It would be most unjust to require the defendant to admit having received the bank book and its proceeds and deny him the opportunity to explain how he came by them. Upon the defendant's theory of the case the transfer of the bank book was one of several facts making up a whole transaction. Having called the defendant as a witness to one of the constituent facts, plaintiff could not object, on any just ground, to his

testifying to the whole. To sustain his objection would be to countenance his occupying inconsistent positions. For the protection of the estate which the plaintiff represents, the statute denied the defendant the right to testify in his own behalf. The plaintiff was at liberty to insist upon or waive the benefit of the statute as seemed to him best for the interests of the estate. He could keep the door shut, if he chose to do so; but he could not open it, so far or so long as suited his own purposes, and then close it. Once open it remains open until the end of the litigation.

"It may be that plaintiff could have called the defendant as a witness to some fact without waiving his incompetency to testify generally; as to testify to some matter arising since his appointment as administrator (*Merchants' Loan & Trust Co.* v. *Egan,* 222 Ill. 494 [78 N. E. 800]), or in case of necessity to identify letters or other documentary evidence preparatory to offering them in evidence (*Garrus* v. *Davis,* 234 Ill. 326 [84 N. E. 924]; *Stevens* v. *Moulton,* 68 N. H. 254 [38 Atl. 732]). But these and similar cases are to be regarded as exceptions to the general rule that by using a disqualified witness a party waives the right to object to his competency later.

"Plaintiff contends that our decisions on this question have all proceeded on the ground that the party calling the witness has examined him generally on the question in issue. This is a misinterpretation of our holdings. While such was the situation in some cases, and so there was no occasion in the particular case to go further than that, we have no decision holding that, in order to waive the disqualification, it is necessary that the examination of the witness relate to the contract in issue. In some of the cases the rule we now announce was unmistakably forecasted.

"Plaintiff also argues at some length that *Linsley* v. *Lovely, supra,* does not bear upon the present

question; that, as it relates to waiver of incompetency on account of interest, it is not an authority for our decisions based upon it where the question was waiver of incompetency due to the death of the other party. The force of *Linsley* v. *Lovely* as an authority becomes apparent when we consider the successive steps by which the law applicable to the case has developed. At common law no person interested in a cause could be admitted to testify in favor of that interest. *Carr* v. *Cornell,* 4 Vt. 116, 118. Prior to 1852 a party situated like the defendant was denied the right to testify, not because the other party to the transaction was dead, but because of interest. By No. 13, Acts of 1852, all objection arising from interest, whether as party or otherwise, was removed (*Smith* v. *Potter,* 27 Vt. 304, 308 [65 Am. Dec. 198]), and a party was given the right to compel the adverse party to testify in his behalf.

"*Linsley* v. *Lovely* arose before the Act of 1852. The court then held that a party who called a witness who was disqualified because of interest and examined him upon a question to the court touching the interest of another witness could not object to his being examined by the other party upon the merits of the cause to the jury. It was said that by so doing the party calling him waived the right to object to his competency. So long as the statute of 1852 remained in force unamended the fact that one of the parties to a transaction was dead did not affect the right of the living party to testify. To guard estates of deceased persons from the apprehended danger of allowing the survivor when the other party was disabled by death to meet and explain such testimony, the legislature saw fit to restrict the effect of the statute of 1852 by engrafting thereon provisos relating to such cases. *Fitzsimmons* v. *Southwick,* 38 Vt. 509, 514. These provisos first appeared in the revision of 1863 (G. S. ch. 36, § 24), and covered what is now P. S. 1589 to 1591. An exception was thus carved out of the old

disqualification of interest, and, within a limited scope, the discarded rule was restored. See 1 Wigmore on Evidence, § 578. The main object of the statute was to remove and not to create disqualifications; and the provisos operate as a limitation or exception, so that competency is the rule and incompetency the exception. See *Hopkins Tr.* v. *Sargent's Estate,* 88 Vt. 217 (92 Atl. 14); *Lytle* v. *Bond's Estate,* 40 Vt. 622. Within their scope the provisos restore the disqualification that existed at common law. Thus it is seen that *Linsley* v. *Lovely* is full authority for the several decisions in support of which it is cited."

In *Hattersley Brokerage & Comm. Co.* v. *Humes,* 193 Mo. App. 120 (182 S. W. 93), a witness incompetent to testify under a similar statute was sworn in probate court, where it was suggested he was an incompetent witness, and examined. Upon the trial of an appeal from the probate court the question of the competency of this witness under the statute to testify was raised. It is said:

"At the time defendant called Mr. Hattersley as a witness in the probate court, plaintiff's counsel suggested to him that Mr. Hattersley was an incompetent witness under the statute, and if defendant saw fit to use him in the probate court, it would operate as a waiver of such incompetency, and that plaintiff would introduce him in the trial in any further proceedings thereafter. Notwithstanding this warning, defendant's counsel caused the witness to be sworn and examined him to the extent at least of identifying the account sued upon, as above stated. On the trial in the circuit court, after showing these facts, plaintiff introduced Mr. Hattersley as a witness, and he was permitted to testify touching the transaction involved—that is, the merits of the case throughout, in the view that, though incompetent in the first instance, the matter concern-

ing that had been waived by defendant. Defendant objected and excepted and argues here that the court erred in respect of this matter, but we are not so persuaded. It is to be conceded that Mr. Hattersley was an incompetent witness in the first instance, under the statute, for that he personally, representing plaintiff corporation, contracted the sale of the flour to Humes, since deceased. However, it was competent for defendant executrix to call him as a witness in behalf of the estate, if she choose to do so. Indeed, the statute (R. S. 1909, § 6356) so provides. But by calling as a witness an adverse party thus incompetent and examining him touching the merits of the controversy, one waives the right to object thereafter on the grounds of the incompetency of the witness. In other words, such renders the witness competent to speak thereafter throughout the proceedings. The cases all declare the rule to this extent. So it is that, where a party to a suit is disqualified by the statute because of the death of the other party to testify, the taking of his deposition by the adverse party constitutes a waiver as to such incompetency. (See *Tomlinson* v. *Ellison,* 104 Mo. 105 [16 S. W. 201]); see, also, *Stone* v. *Hunt,* 114 Mo. 66 [21 S. W. 454]; *Ess* v. *Griffith,* 139 Mo. 322 [40 S. W. 930]; *In re Soulard's Estate,* 141 Mo. 642 [43 S. W. 617].) The rule is the same if the adverse party sees fit to take the deposition of the incompetent witness and file it in the cause, even though such deposition is not read in evidence at the trial. (See *Borgess Investment Co.* v. *Vette,* 142 Mo. 560 [44 S. W. 754, 64 Am. St. Rep. 567].) So, also, is the matter of the incompetency waived in such circumstances through the taking of the deposition of a witness who would otherwise be excluded from speaking in the case perforce of the statute, even though such deposition so taken is not filed in the case at all. (See *Rice* v. *Waddill,* 168 Mo. 99, 101 [67 S. W. 605].)''

The statute, 3 Comp. Laws 1929, § 14219, recognizes the general rule above stated. It provides:

"That when the testimony or deposition of any witness has once been taken and used (or shall have heretofore been taken and used) upon the trial of any cause, and the same was, when so taken and used, competent and admissible under this section, the subsequent death or incompetency of such witness or of any other person shall not render such testimony incompetent under this section, but such testimony shall be received upon any subsequent trial of such cause."

The testimony of the defendants was taken and used upon the first trial of this cause. When so taken and used it was, by reason of the waiver of the plaintiff of the disqualification of such witnesses, competent and admissible under 3 Comp. Laws 1929, § 14219, and such testimony, under this statute, may be received upon any subsequent trial of such cause.

We hold that plaintiff, by failing to object to the competency of the defendants and electing to cross-examine them on the first trial, waived her right to object to the testimony of such witnesses in a subsequent trial upon the ground of their disqualification or incompetency to testify. The trial court was in error in holding otherwise. There are other errors complained of. They may not arise on a new trial. For the reason above, judgment is reversed, with costs, and new trial ordered.

CLARK, C. J., and McDONALD, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.