MICHIGAN GAS UTILITIES v PUBLIC SERVICE COMMISSION

Docket No. 133938. Submitted June 18, 1992, at Lansing. Decided July 7, 1993, at 9:20 A.M. Leave to appeal sought.

The Public Service Commission, in proceedings related to Michigan Gas Utilities' gas-cost reconciliation for 1984, disallowed an item of cost in the form of an additional payment made by Michigan Gas Utilities to Panhandle Eastern Pipeline Company. The Public Service Commission had allowed the Attorney General to intervene in the proceedings to oppose the position taken by Michigan Gas Utilities. The additional payment, referred to by the parties as a "negative refund," had resulted from a cost-reconciliation proceeding, and a stipulation therein, before the Federal Energy Regulatory Commission involving Panhandle Eastern, Michigan Gas Utilities, the Public Service Commission, the Michigan Attorney General, and others. The Ingham Circuit Court, Carolyn Stell, J., on appeal by Michigan Gas Utilities, affirmed the decision of the Public Service Commission. Michigan Gas Utilities appealed.

The Court of Appeals *held:*

1. The Public Service Commission must defer to the Federal Energy Regulatory Commission, which approved the "negative refund" pursuant to the parties' stipulation. The Public Service Commission or the Attorney General could have appealed the ruling of the Federal Energy Regulatory Commission, but failed to do so.

2. At issue in a gas-cost reconciliation proceeding is the reasonableness and prudence of costs incurred, not a utility's fair rate of return on investment. In this case, the circuit court erred in concluding that, because the rates as finally reconciled were not confiscatory, Michigan Gas Utilities' challenge of the Public Service Commission's decision was without merit.

Reversed and remanded to the Public Service Commission.

1. INDEMNITY — ADVERSARIAL PROCEEDINGS.

Where an indemnitee has been adjudged liable to pay a certain

REFERENCES

Am Jur 2d, Judgments §§ 398, 551, 553, 561, 566.
See ALR Index under Indemnity.

sum, liquidation of that sum by judgment in an adversarial proceeding is binding on the indemnitor in the absence of fraud if the indemnitor had notice of the proceedings and an opportunity to defend; otherwise, the judgment is merely prima facie evidence of the indemnitor's liability to the indemnitee.

2. ESTOPPEL — JUDICIAL ESTOPPEL.

The doctrine of judicial estoppel precludes a party as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation.

*Honigman Miller Schwartz & Cohn* (by *James A. Ault* and *Daniel J. Demlow*), and *William F. Braeuninger* and *John E. Palincsar,* for Michigan Gas Utilities.

*Don L. Keskey* and *Henry J. Boynton,* Assistant Attorneys General, for the Public Service Commission.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Luis F. Fernandez* and *Donald E. Erickson,* Assistant Attorneys General, for the Attorney General.

Before: SULLIVAN, P.J., and MACKENZIE and I. B. TORRES,* JJ.

PER CURIAM. Michigan Gas Utilities (MGU) appeals as of right from an opinion and order of the Ingham Circuit Court affirming a July 22, 1986, opinion and order of the Michigan Public Service Commission. The decision of the PSC provides refunds, with interest, to MGU ratepayers as part of gas-cost reconciliation proceedings for the 1984 rate year. MGU contends on appeal that it should retain $293,720.07 of the total refund as the net of a "negative refund" that MGU paid to Panhandle Eastern Pipeline Company.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

While a gas-cost reconciliation (GCR) proceeding, MCL 460.6h; MSA 22.13(6h), was pending in the PSC, involving MGU and its ratepayers among others, a similar reconciliation proceeding was pending in the Federal Energy Regulatory Commission (FERC) involving Panhandle, as common carrier, MGU, as wholesale purchaser, and the PSC, among others. In the FERC proceeding, all parties stipulated certain rates and tariffs for Panhandle up to and including September 30, 1983, and stipulated different rates and tariffs thereafter.

The stipulation required that Panhandle would make refunds to its customers reflecting the rates and tariffs for different periods. The FERC approved the stipulation and settlement on March 19, 1984, and following rehearing permitted some modifications on May 10, 1984.

In early July 1984, Panhandle submitted its refund calculations to MGU. Panhandle calculated a net refund of $289,479.15 to MGU for the period of October 1982 through September 1983; it calculated a "negative refund" of $583,199.22 for the period of October 1983 through February 1984, leaving a net balance owed by MGU of $293,720.07. MGU paid the balance on July 18, 1984.

On July 25, 1984, Panhandle prepared a comprehensive refund report detailing the respective liabilities of Panhandle and each of its customers pursuant to the approved settlement and reflecting the additional net billing of $293,720.07 to MGU. The report was published in the Federal Register on August 14, 1984, which, under the FERC rules, began a comment period regarding the reconciliation order. MGU did not submit any comments on or before the August 17, 1984, comment deadline.

About this time, the PSC staff began pressuring MGU to challenge the propriety of the "negative refund." As part of the settlement, MGU obtained

numerous ancillary benefits that it considered more valuable than the "negative refund" amount, including flexibility in purchasing gas supplies elsewhere, thereby saving ratepayers some $3.7 million.

After continued pressure from the PSC staff, MGU, on December 12, 1984, moved belatedly for leave to protest the Panhandle "negative refund," arguing that the stipulation did not provide for any negative refunds and that such refunds constituted retroactive rate increases in violation of commission regulations. Panhandle responded to the MGU protests on January 8, 1985, arguing that (1) MGU's filing was untimely, (2) reopening the settlement proceedings to challenge the refunds would undermine the integrity and finality of rate settlements, and (3) the implementation of the settlement agreement entered into by informed parties following approval after due consideration by the FERC was not "retroactive ratemaking."

In a letter dated October 10, 1985, and signed by the secretary of the FERC, that body ruled as follows:

> The Commission has reviewed the circumstances of the refund, the protest, and responses and concurs with the interpretation advanced by Panhandle in its response to the protest. Accordingly, the waiver to file a later filed protest is granted, however, the protest is denied for the reason stated above.
>
> The refund is hereby accepted in satisfactory compliance with the refund provisions of Panhandle's stipulation and agreement.
>
> A copy of this letter, together with the attached appendix, have [sic] been sent to each of the State regulatory agencies identified below. The purpose of that action is to inform those regulatory agencies of the acceptance and approval by the Commission of the subject refund report.

No party to the FERC proceeding thereafter appealed this ruling. However, in the parallel state GCR proceeding, the PSC disallowed the payment MGU made to Panhandle. The PSC determined that MGU's payment to Panhandle was imprudent and unreasonable and not within the terms of the stipulation and agreement for the very reasons given by MGU in its December 12, 1984, protest, that MGU is estopped by those arguments from asserting the contrary, that MGU was derelict in protesting the Panhandle billing, and that had MGU timely protested "the result might have differed."

The PSC further held that the FERC decision regarding the MGU protest was less than "an entirely substantive one." The PSC found that

> implicit in FERC's determination that the settlement process should not be disturbed so long after it had been concluded by the parties was its belief that when a settlement process lasts as long as this one did and offers as much opportunity to negotiate and challenge the agreement as this one did, no party to it ought to be permitted to challenge it. The Commission further agrees with the Attorney General and the ALJ that also implicit in FERC's ruling is that a challenge at the appropriate time, prior to August 17, 1984, might have been honored. The Commission therefore is persuaded that MGU's lack of diligence constitutes an unreasonable and imprudent gas purchase practice violative of the standards contained in [MCL 460.6h; MSA 22.13(6h)].

The circuit court affirmed, finding the PSC's interpretation of the FERC ruling to be supported by competent, material, and substantial evidence on the whole record. It further opined that, even if disallowance of the Panhandle expense was improper, MGU has failed to show that its resulting

rates were unreasonable and thus equivalent to a constitutional deprivation.

This Court recognizes two issues for review. First, whether there is a question of fact to be resolved with competent, material, and substantial evidence on the whole record, or, as a question of law, does the FERC ruling regarding MGU's protest to Panhandle's "negative refund" calculation bind the PSC in parallel gas-cost reconciliation proceedings. Second, whether the PSC erred in ordering MGU to refund a sum that does not reflect Panhandle's "negative refund" calculation.

The parties are in complete agreement that, in a GCR proceeding, the utility is entitled to recover actual, out-of-pocket expenses that were reasonably and prudently incurred. We find it helpful to our analysis to analogize MGU's relationship with its ratepayers to that between indemnitee and indemnitor.

Where an indemnitee has been adjudged liable to pay a certain sum, liquidation of that sum by judgment in an adversarial proceeding may or may not be binding on the indemnitor. If the indemnitor had no notice of the proceeding, and no opportunity to defend, then the judgment is merely prima facie evidence of the indemnitor's liability to the indemnitee. But where, as here, the indemnitor has full notice of the proceeding, and in fact was a full party to it, the indemnitor is bound by the prior judgment, absent a showing of such circumstances of collusion between the parties as would amount to a fraud upon it. *Knickerbocker v Wilcox,* 83 Mich 200, 210; 47 NW 123 (1890); *Grant v Maslen,* 151 Mich 466, 472; 115 NW 472 (1908).

The parties to the FERC proceeding, including Panhandle, MGU, and the PSC represented by the Michigan Attorney General, all entered into a

stipulation approved by FERC that, as interpreted and implemented by MGU and Panhandle, required MGU to pay Panhandle an additional amount. The PSC staff disagreed with that interpretation and importuned MGU to belatedly protest the stipulation and agreement. The FERC waived the delay and accepted the protest, but found that MGU and Panhandle correctly interpreted the stipulation.

The record does not support a contrary reading of the FERC ruling—the interpretation of the FERC ruling being a question of law. *Getty Oil Co v Dep't of Energy,* 478 F Supp 523 (CD Cal, 1978). That ruling expressly considers the Panhandle interpretation of the stipulation to be correct. The PSC, as an intervening party, had equal opportunity with MGU to protest, to brief the issues, and even to appeal the FERC's adverse ruling, but it failed to do so. The FERC's interpretation of its own approval of the original settlement, as modified, is entitled to substantial deference. *Id.*

The contention that a "negative refund" was entirely outside the contemplation of the parties in entering into the stipulation and agreement, or that, so interpreted, the stipulation and agreement would be somehow illegal, is unfounded. If indeed the "negative refund" that MGU paid to Panhandle was improper or illegal in any respect, then the entire amount of the negative refund, $583,199.22, should have been disallowed in these reconciliation proceedings. There is no logical justification for denying ratepayers the benefit of the positive refund of $289,479.15 for the October 1982 through September 1983 period. The very fact that the PSC focused on the *net* refund, which was negative, rather than on the entire negative portion of the refund, for the period from October 1983 through February 1984 belies its position.

We find no merit to the Attorney General's

argument that the PSC ruling focuses on the prudence of the MGU payment rather than on the prudence of the stipulation and settlement. If the settlement itself was proper, then MGU's payment to Panhandle pursuant to and, as the FERC ruled, as required by the settlement agreement was prudent.

MGU's pleadings in support of its FERC motion to challenge Panhandle's assessment of a "negative refund" do not estop MGU from arguing otherwise in this GCR proceeding before the PSC. The doctrine of judicial estoppel precludes a party as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation. It prevents a party from "playing fast and loose" with the courts and protects the essential integrity of the judicial and administrative processes. *Allen v Zurich Ins Co,* 667 F2d 1162, 1166-1167 (CA 4, 1982). The doctrine generally applies to situations in which the party subsequently asserting a contrary position prevailed in an earlier proceeding. *SCA Services, Inc v General Mill Supply Co,* 129 Mich App 224, 230-231; 341 NW2d 480 (1983), and cases cited therein; *Billingsley v Gulick,* 256 Mich 606, 608; 240 NW 46 (1932).

Had MGU prevailed in its protest before the FERC, it would be judicially estopped from taking a contrary position regarding the validity of the "negative refund" in these proceedings; but MGU did not prevail. It has merely acceded to that ruling, which, having been made by a federal agency with appropriate jurisdiction, binds MGU. Full faith and credit and supremacy clause principles effectively compel state agencies, such as the PSC, to likewise accede to such a final federal agency ruling. *Embry v Palmer,* 107 US 3; 2 S Ct 25; 27 L Ed 346 (1883); *United Farm Workers,*

*AFL-CIO v Arizona Agricultural Employment Relations Bd,* 669 F2d 1249 (CA 9, 1982).

We find no merit to the Attorney General's assertion that MGU owed ratepayers a duty to appeal the FERC determination. The Attorney General was a party[1] in that same proceeding and did not protest Panhandle's interpretation of the settlement agreement, file a brief in support of MGU's motion, or appeal the FERC's ruling.

The circuit court clearly erred in its alternative ruling that, because the rates as finally reconciled were not confiscatory, MGU's protest is without merit. A GCR proceeding is not concerned with a fair rate of return on investment, it is concerned with reconciling reasonably and prudently incurred expenses with collected rates. The reconciliation statute specifically authorizes a gas utility to recover from customers any net amount by which the rates collected during the reconciliation period were less than the actual amount reasonably and prudently incurred by the utility for its gas supply and not otherwise lawfully precluded by the PSC. MCL 460.6h(14); MSA 22.13(6h)(14). Recovery of such approved production-related costs is legal, and does not constitute unlawful, retroactive ratemaking. *Ass'n of Businesses Advocating Tariff Equity v PSC,* 174 Mich App 63; 435 NW2d 766 (1989), and see MCL 460.6h(14), (17)(b); MSA 22.13(6h)(14), (17)(b). In any event, the outcome of this GCR was a refund to ratepayers; MGU contests only the size of the refund. A reduction of the

---

[1] The Attorney General argues on motion for rehearing that he appeared before the FERC in his capacity as legal representative of the PSC, *not* in his capacity *parens patriae* as protector of the interests of ratepayers, which legal work is handled by a separate division in the Office of Attorney General. The internal organization of that office does not alter the fact that the Attorney General, of whom there is only one, Const 1963, art 5, § 21, was a party in as many capacities as he alone decided and, like other parties, is bound by the outcome.

refund to be paid by MGU hardly constitutes retroactive ratemaking.

In summary, if an estoppel exists in this case, it is against the PSC and the Attorney General, who were parties to the FERC proceeding and implicitly approved the Panhandle settlement agreement and failed to protest or appeal the FERC ruling that Panhandle could properly collect from MGU a "negative refund" pursuant to that settlement. Further, the PSC order is effectively improper on its face because either the entire negative refund must be disallowed, or none of it may be disallowed. No justification exists for allowing part of it and disallowing the rest. The FERC's ruling that the negative refund was within the terms of the stipulation is binding on the parties to this proceeding. With regard to the amount here in controversy, MGU took "all appropriate legal and regulatory actions to minimize the cost of purchased gas." MCL 460.6h(6); MSA 22.13(6h)(6).

The decision of the circuit court and the PSC are reversed, and the cause is remanded to the PSC for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.